**COMMONWEALTH of Kentucky, Appellant/Cross Appellee,**

v.

**Lonnie A. HARRIS, Appellee/Cross Appellant.**

**Nos. 2006–SC–000040–DG, 2006–SC–000451–DG.**

Supreme Court of Kentucky.

April 24, 2008.

Jack Conway, Attorney General, Gregory C. Fuchs, Assistant Attorney General, Criminal Appellate Division, Frankfort, KY, for Appellant.

Dennis James Burke, Assistant Public Advocate, Department of Public Advocacy, LaGrange, KY, for Appellee.

Opinion of the Court by Justice CUNNINGHAM.

The Commonwealth appeals from an opinion of the Court of Appeals reversing the judgment of the Casey Circuit Court. Appellee, Lonnie A. Harris, was convicted of burglary and theft by unlawful taking. About a year later, Harris moved the Casey Circuit Court for a new trial pursuant to RCr 10.06, CR 59.01 and CR 60.02, due to newly discovered evidence. Additionally, Harris filed a *pro se* motion pursuant to RCr 11.42, alleging ineffective assistance of counsel. Both motions were denied. Upon consolidation of the two appeals, the Court of Appeals affirmed the trial court with respect to the ineffective assistance of counsel claim and reversed the trial court's denial of a new trial on CR 60.02 grounds. This Court granted discretionary review. For the reasons set forth herein, we affirm in part and reverse in part the opinion of the Court of Appeals and reinstate the judgment of the Casey Circuit Court.

Harris was convicted of burglarizing the home of Owolene Elmore. Ms. Elmore testified that after having spent the previous night away, she returned to her home on the morning of August 29, 2000, to find that someone had stolen two guns and $520 in cash. The previous evening, Jackie Carman had been a guest in Ms. Elmore's home. During the visit, Mrs. Carman's daughter, Teena, had stopped by to borrow Mrs. Carman's car. Teena, along with her friend Michael Holt, left Ms. Elmore's house in Mrs. Carman's vehicle. Later in the evening, Ms. Elmore drove Mrs. Carman home and did not return to her own residence until the following morning.

Holt and Teena Carman testified at Harris' trial concerning the events that transpired after they left Ms. Elmore's house. However, because they were both under the influence of cocaine, alcohol and "pills," neither could provide very detailed information. Holt testified that he remembered leaving in Mrs. Carman's vehicle and that he was driving. But he could not remember whether or not he returned to Ms. Elmore's house. He also acknowledged making a taped statement about the events to Casey County Sheriff, Robert Weddle, the following day. However, at trial Holt claimed that, due to his intoxication, he could not remember making the statement or whether the statement was truthful.

The taped statement made to Sheriff Weddle was played at trial. In it, Holt stated that he, Teena, and Harris returned to Ms. Elmore's house later that evening and that she was not at home. He stated that they took two guns and $520 in cash. Later in the evening, they drove to William Luttrell's house. Teena and Harris waited some distance away in the car while Holt went to Luttrell's door and traded the guns and money for cocaine.

Teena testified at trial that she, Harris and Holt returned to Ms. Elmore's house

on the evening of August 28th. However, she testified that she could not recall what happened there since she had fallen asleep on the couch and was carried out of the home. Later that night at Harris' home, Teena learned that Holt and Harris had taken the guns and cash. In fact, she saw both men handling the guns.

Harris was found guilty of first-degree burglary and theft by unlawful taking over $300. He was sentenced to imprisonment for twenty years and five years, respectively, to be run concurrently. He appealed to this Court as a matter of right, and we affirmed.

Three months after Harris' final sentencing, Luttrell was tried on charges of trafficking in cocaine. These charges were based on Holt's statement to Sheriff Weddle in which he inculpated Luttrell in the purchase of the stolen guns and in the sale of cocaine. Holt testified at Luttrell's trial. However, as opposed to his testimony at Harris' trial, Holt stated that he remembered providing the statement to Sheriff Weddle, even though he was very intoxicated. He explained that he lied during portions of the statement in order to "get a plea bargain." According to Holt, Sheriff Waddle promised him a plea bargain if he would "tell on others." Thus, Holt implicated Luttrell in the statement. At Luttrell's trial, however, Holt explained that he had not taken the guns to Luttrell's house or received cocaine from Luttrell, but had traded the guns for drugs in a neighboring county. In fact, Holt testified that "the only thing that is true on [the taped statement] is about me taking the money and guns."

Thereafter, Harris filed a motion for a new trial pursuant to RCr 10.06, CR 59.01 and CR 60.02, asserting two claims of newly discovered evidence. First, Harris argued that Holt's testimony at Luttrell's trial, in which he recants substantial por-

tions of his taped statement, warranted a new trial. Second, Harris submitted an affidavit of Ms. Elmore taken after Harris' trial, in which she stated that Harris was welcome in her house as a guest. Based on this statement, Harris argued that he could not be convicted of burglary, as there was no unlawful entry.

Harris also filed a *pro se* motion pursuant to RCr 11.42, claiming ineffective assistance of counsel. Harris alleged that his attorney failed to investigate anything outside the scope of the Commonwealth's discovery, and that a pretrial investigation would have revealed that his entry into Ms. Elmore's home was with her permission.

The Casey Circuit Court denied both motions, and Harris appealed. Upon consolidation of the two appeals, the Court of Appeals affirmed in part and reversed in part. The Court of Appeals found no error in the trial court's denial of Harris' RCr 11.42 motion. As to the CR 60.02 motion, the Court of Appeals concluded that Ms. Elmore's statement did not constitute newly discovered evidence within the meaning of the rule. However, the Court of Appeals did find that Holt's subsequent testimony at Luttrell's trial warranted a new trial, and remanded the case. The Commonwealth sought discretionary review of that portion of the Court of Appeals' opinion granting Harris a new trial, and this Court granted review. Harris filed a cross-motion for review of the denial of his RCr 11.42 motion, which was also granted.

■■■ We first address the issue of Holt's testimony at Luttrell's trial. "[I]n order for newly discovered evidence to support a motion for new trial it must be 'of such decisive value or force that it would, with reasonable certainty, have changed the verdict or that it would proba-

bly change the result if a new trial should be granted.' " *Jennings v. Commonwealth*, 380 S.W.2d 284, 285–86 (Ky.1964). *quoting Ferguson v. Commonwealth*, 373 S.W.2d 729, 730 (Ky.1963). The determination as to whether newly discovered evidence warrants a new trial lies within the sound discretion of the trial court and will only be overturned upon a demonstration that this discretion was abused. *Barnett v. Commonwealth*, 979 S.W.2d 98, 102 (Ky. 1998).

We have carefully reviewed the record in this case, including Holt's testimony at the Luttrell trial. As indicated above, Holt's testimony at Luttrell's trial is substantially different than his testimony at Harris' trial, though one obviously cannot determine for certain which testimony is more truthful. *See Commonwealth v. Spaulding*, 991 S.W.2d 651, 656–57 (Ky. 1999), *quoting Anderson v. Buchanan*, 292 Ky. 810, 168 S.W.2d 48, 53–54 (1943) ("[I]t is not enough [to warrant a new trial] to merely show that a prosecuting witness has subsequently made contradictory statements or that he is willing to swear that his testimony upon the trial was false, for his later oath is no more binding that his former one."). Even if we assume that Holt's testimony at Luttrell's trial was truthful, and that Holt had testified in the same way at Harris' trial, we do not believe a different result would have been reached.

At Harris' trial, Holt gave no direct testimony implicating Harris; he claimed an inability to remember the night to nearly every question posed to him. His statement to Sheriff Weddle was played for the jury. In that statement, Holt stated that he, Harris, and Teena had been to Ms. Elmore's house that evening. He admitted that he had found the money at Ms.

Elmore's house, and that Harris had found the guns.

At Luttrell's trial, Holt's taped statement to Sheriff Weddle was again played for the jury. This time, however, Holt seemed to remember the evening more clearly. He directly testified that Harris and Teena were with him at Ms. Elmore's house, and that they left with cash and guns. Holt was also questioned extensively about his claim to Sheriff Weddle that he had sold the guns to Luttrell. Holt explained that he had lied about Luttrell's involvement to curry favor with Sheriff Weddle during the statement. He did not, however, state that he had lied about Harris' or Teena's involvement in the burglary.

While Holt's sudden recollection at Luttrell's trial is curious, we do not believe that it would have changed the outcome of Harris' trial. When Holt's testimony at Luttrell's trial is read in its entirety, it is abundantly clear that Holt recants only his implication of Luttrell in the cocaine transaction. Nothing in his testimony at Luttrell's trial can be construed as exonerating Harris or denouncing Harris' involvement in the robbery. For this reason, we can discern no reasonable certainty that the outcome of Harris' trial would be different, even if it were revealed that Holt had lied about Luttrell's involvement. The trial court did not abuse its discretion in denying the motion for a new trial.

■ Harris makes a second claim that he is entitled to a new trial on the basis of newly discovered evidence. With his CR 60.02(b) motion to the trial court, Harris attached an affidavit of Ms. Elmore in which she states that Harris was welcome to enter her home, even when she was not present.[1] Harris now argues that this subsequent admission exonerates him of

1. The purported affidavit was not notarized.

the burglary charge, as he did not enter Ms. Elmore's home unlawfully.

■ We agree with both the trial court and the Court of Appeals that this affidavit does not constitute "newly discovered evidence" within the meaning of CR 60.02. Newly discovered evidence is evidence that could not have been obtained at the time of trial through the exercise of reasonable diligence. *Richardson v. Head*, 236 S.W.3d 17, 21 (Ky.App.2007). Ms. Elmore was a witness at Harris' trial and was available for cross-examination concerning Harris' supposed permission to enter the house. Harris has failed to demonstrate any reason why this testimony was unavailable at the time of his trial. *See Meeks v. Ellis*, 7 S.W.3d 391 (Ky.App.1999) (motion for a new trial was properly denied where movant could not allege that he could not have discovered allegedly new information at the time of trial). As such, a new trial pursuant to CR 60.02(b) is not warranted, and the trial court properly denied the motion.

■ Finally, Harris made a claim of ineffective assistance of counsel pursuant to RCr 11.42, which the trial court rejected. Harris claims that his trial counsel should have discovered from Ms. Elmore that he was permitted to be in her home. Again, he relies on the purported affidavit to support this contention.

■■ When alleging ineffective assistance of counsel, the burden rests with the appellant to prove that the performance of trial counsel was deficient, and that such deficiency resulted in actual prejudice so as to deprive the appellant of a fair trial. *Gall v. Commonwealth*, 702 S.W.2d 37 (Ky. 1985), *adopting Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). An appellant is not entitled to relief pursuant to RCr 11.42 unless it is established that, but for counsel's deficiency, the result of the trial would have been different. *Brewster v. Commonwealth*, 723 S.W.2d 863, 864 (Ky.App.1986).

Harris has failed to satisfy his burden of proof. The purported affidavit of Ms. Elmore incorrectly spells her name and is not notarized, raising serious questions about its authenticity. These doubts are only compounded by the direct conflict between the "affidavit" and Ms. Elmore's testimony at trial. Ms. Elmore testified unequivocally that someone had "broken into her home." She likewise reported to police that someone had "broken in" once she discovered her guns and money missing. It is abundantly clear from her trial testimony that Ms. Elmore considered the entry unlawful.

Moreover, we find no indication that Harris was prejudiced by trial counsel's failure to cross-examine Ms. Elmore about any supposed permission to enter her home. Even if Harris was permitted to enter her home, that permission certainly was revoked when he proceeded to steal from her, thereby making his continued presence in the home unlawful. *Fugate v. Commonwealth*, 993 S.W.2d 931, 940 (Ky. 1999) ("[T]he privilege granted to one doing business ceases when the licensee commits acts, such as crimes, inconsistent with the business. This rationale applies to the personal dwelling as well.").

The trial court in this case had presided over both Harris' and Luttrell's trials, and was very familiar with the evidence and testimony. For this reason, the trial court was capable of considering Harris' RCr 11.42 motion through a review of the record, and did not err in denying Harris an evidentiary hearing. *Brewster*, 723 S.W.2d at 865. Furthermore, as Harris failed to establish that he was prejudiced by any supposed ineffective assistance of counsel, a new trial was unwarranted. There was no abuse of discretion.

For the foregoing reasons, we reverse that portion of the decision of the Court of Appeals which concluded that the trial court erred in denying the CR 60.02 motion, and hereby reinstate the judgment of the Casey Circuit Court. Further, we affirm the Court of Appeals' denial of the RCr 11.42 motion.

All sitting. All concur.