RENDERED: FEBRUARY 7, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0389-MR

DEJUAN E. HAMMOND                                                    APPELLANT

APPEAL FROM JEFFERSON CIRCUIT COURT
v.          HONORABLE PATRICIA MORRIS, JUDGE
ACTION NO. 13-CR-003412

COMMONWEALTH OF KENTUCKY                                        APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: EASTON, ECKERLE, AND KAREM, JUDGES.

EASTON, JUDGE: The Appellant, Dejuan Hammond ("Hammond" or "Dejuan"

within some quotes we will use), appeals the Opinion and Order of the Jefferson

Circuit Court denying his CR[1] 60.02(f) motion for a new trial. Hammond based

his motion on a previously unidentified witness, who came forward with

---

[1] Kentucky Rules of Civil Procedure.

supposedly newly discovered evidence.  Hammond's motion was untimely and

without merit.  We affirm.

## FACTUAL AND PROCEDURAL HISTORY

The facts leading to Hammond's conviction were summarized by the

Kentucky Supreme Court as follows:

> On the evening of March 23, 2009, Steven Pettway shot and killed Troya Sheckles in Shelby Park in Louisville, Kentucky.  Pettway was tried and convicted by a Jefferson Circuit Court jury of murder and intimidating a participant in the legal process.  In accordance with the jury's recommendation, the trial court sentenced him to a total of 55 years' imprisonment. . . .
>
> Pettway's co-defendant was [Hammond].  The two were tried separately.  Similar to the case involving Pettway, the Commonwealth's theory against [Hammond] was that Pettway killed Sheckles at [Hammond's] direction to prevent her from testifying in the upcoming murder trial of [Hammond's] younger brother, Lloyd Hammond.  It is undisputed that Sheckles was an essential eye witness in Lloyd's murder trial.
>
> After multiple mistrials, [Hammond] was successfully tried and convicted by a Jefferson Circuit Court jury of complicity to murder and complicity to intimidating a participant in the legal process.  After convicting [Hammond] of being a second-degree persistent felony offender, the jury sentenced him to 25 years' imprisonment for murder, and five years enhanced to 10 for intimidating a participant in the legal process.

*Hammond v. Commonwealth* (*Hammond I*), No. 2015-SC-000269-MR, 2016 WL

3371054, at *1 (Ky. Jun. 16, 2016).

Both parties called Hammond's girlfriend, Princess Bolin ("Bolin"),

to testify. Bolin's testimony was as follows:

> During Dejuan's second trial, both parties called his girlfriend, Princess Bolin, as a witness. To say Bolin was unreliable for either party is an understatement. Both the Commonwealth and the defense impeached her significantly throughout the course of her testimony.
>
> When all the smoke settled, the jury was left with the following information regarding Bolin. Prior to trial, Bolin met with the Commonwealth on a handful of occasions, hoping to negotiate a plea deal. During those meetings, Bolin made two recorded statements to the police. Both statements implicated Dejuan in Sheckles' murder. She told a detective that before Lloyd's trial, Dejuan instructed her to go to Shelby Park and look for a "dark-skinned, short haired woman." Bolin also told police that once she was in the park, she saw a woman matching the description and called Dejuan. Sheckles was murdered within an hour of the call.
>
> During the trial, though, Bolin contradicted, denied memory of, and outright recanted multiple facts – which led to a long line of impeachment. For example, as noted above, she told the police in her recorded statement that she went to the park; that Dejuan told her to look for Sheckles; that she called and notified Dejuan that Sheckles was at the park; and, not too long afterward, Sheckles was murdered. But at trial, she contradicted these statements by testifying that at the time of Sheckles' murder, she and Dejuan were at a local mall shopping. Even when faced with the video evidence of her own voice in her police statements, Bolin denied remembering much of what she previously stated.

*Hammond v. Commonwealth* (*Hammond II*), No. 2019-CA-001176-MR, 2020 WL 4507349, at \*1 (Ky. App. Jul. 10, 2020).

As indicated in the above quote, Bolin had provided two pre-trial interviews with police. She stated that, on the day of the murder, she walked to a house on East Ormsby Avenue in Louisville where Hammond and Pettway were to smoke marijuana. She said there were people at the East Ormsby house talking about the need to "hurry up and get it done." She said she observed an unknown teenager walking with Pettway along East Ormsby Avenue. In her second interview, Bolin stated the unknown teenager was with Pettway at the East Ormsby house. She said Pettway told the teenager he had to go take care of something.

Hammond filed a direct appeal of his convictions to the Kentucky Supreme Court. The court reversed Hammond's conviction for intimidating a participant in a legal process, but it affirmed the murder conviction. *Hammond I, supra*.

In October 2018, Hammond filed an RCr[2] 11.42 motion for post-conviction relief, alleging ineffective assistance of counsel and a failure by the Commonwealth to provide exculpatory evidence pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). The circuit court denied the

---

[2] Kentucky Rules of Criminal Procedure.

RCr 11.42 motion.  This Court affirmed the circuit court's denial of the motion in *Hammond II*, *supra*.

In April 2023, Hammond filed a motion for a new trial pursuant to CR 60.02(f), RCr 10.02, and RCr 10.06, claiming he had obtained newly discovered evidence from Laron Clarkson ("Clarkson") that someone other than Pettway shot Sheckles and Hammond was actually innocent of the murder charge.  Clarkson is currently serving a prison sentence for murder, robbery, and tampering with physical evidence.[3]  Hammond attached to his motion for a new trial an affidavit from Clarkson, claiming Clarkson was the "unknown teenager" Bolin testified about at trial.  Clarkson would have been approximately seventeen in 2009.

In his affidavit, Clarkson stated the house on East Ormsby was a "common house," a term for a place visited by many people in the neighborhood for purposes such as using drugs.  Clarkson stated he was at the common house with Pettway on the day of Troya Sheckles' murder.  Indeed, Clarkson lived nearby on the same street.  Clarkson stated Bolin arrived at the common house and asked whether Ike Kinnison ("Kinnison") and Mark Jackson ("Jackson") were there as they were supposed to be.  According to Clarkson's affidavit, Bolin said she saw Sheckles at a park.  She added Sheckles set up Jackson's cousin to be robbed and also set up Jimmy Hickman's ("Hickman") girlfriend to be stabbed.

---

[3] Clarkson entered a guilty plea in Jefferson Circuit Case No. 17-CR-000566.

Clarkson stated Hickman later arrived and commented Sheckles was at the park. Hickman told Bolin to go to her mother's house. Kinnison and Jackson then showed up, with the latter wearing all-black clothing and a red bandana. Bolin then reappeared at the common house. Jackson asked her if she went to her mother's house. Bolin said yes, and she handed Jackson a gun. Clarkson stated he sold the gun to Bolin a month earlier.

Bolin, Jackson, and Kinnison left in Bolin's vehicle. Clarkson, Pettway, and Hickman stayed at the house. Clarkson and Hickman left some time later, leaving Pettway at the house. Clarkson stated that a few minutes later he heard three or four gunshots coming from the park. Bolin sped down a neighboring street and pulled into an alley close to the house. Clarkson stated he then saw Kinnison and Jackson running away from the park toward a different house.

Clarkson stated Bolin contacted him on social media. She informed Clarkson that Pettway and Hammond were in jail. She stated she was questioned by the police regarding Sheckles' murder. She said that she told the police she was at the common house with Pettway and an unknown juvenile. She stated Jackson was the one who killed Sheckles. She said she and Jackson and Kinnison decided to frame Pettway. She did not like Pettway since he beat up her father. Clarkson

stated he met Jackson a few months later, with Jackson telling him to say Pettway shot Sheckles.

The Commonwealth filed a response to the motion for a new trial, arguing Hammond's claim had no factual basis, and Clarkson was not being truthful. The circuit court then issued its Opinion and Order denying the motion without a hearing. The court concluded that Clarkson was not credible and that his presence at the common house was corroborated by only Bolin ("the Commonwealth's least reliable witness"). The court concluded that "[t]he inclusion of [Clarkson's] testimony would neither have changed the outcome of the trial with reasonable certainty nor probably change the result if a new trial is granted." This appeal follows.

## STANDARD OF REVIEW

A trial court's denial of a CR 60.02 motion is reviewed under the abuse of discretion standard. *Lawson v. Lawson*, 290 S.W.3d 691, 693 (Ky. App. 2009) (citation omitted). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999) (citations omitted).

## ANALYSIS

Dejuan argues the circuit court erred in denying his motion for a new trial without an evidentiary hearing. The Commonwealth counters Dejuan's motion was untimely. CR 60.02 reads as follows:

> On motion a court may, upon such terms as are just, relieve a party or his legal representative from its final judgment, order, or proceeding upon the following grounds: (a) mistake, inadvertence, surprise or excusable neglect; (b) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59.02; (c) perjury or falsified evidence; (d) fraud affecting the proceedings, other than perjury or falsified evidence; (e) the judgment is void, or has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (f) any other reason of an extraordinary nature justifying relief. The motion shall be made within a reasonable time, and on grounds (a), (b), and (c) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this rule does not affect the finality of a judgment or suspend its operation.

Hammond specifically sought relief under CR 60.02(f) ("any other reason of an extraordinary nature justifying relief"). "What constitutes a reason of extraordinary nature is left to judicial construction." *Commonwealth v. Spaulding*, 991 S.W.2d 651, 655 (Ky. 1999), *as amended* (Jun. 28, 1999). Judicial construction of CR 60.02(f) must consider the following three specific factors:

> The first is that relief under subsection (f) of CR 60.02 will not be available unless none of that rule's

-8-

[other] specific provisions applies. . . . After determining that CR 60.02(a)-(e) do not apply, courts must consider two more factors: (1) whether the moving party had a fair opportunity to present his claim at the trial on the merits, and (2) whether the granting of CR 60.02(f) relief would be inequitable to other parties.

*Snodgrass v. Snodgrass*, 297 S.W.3d 878, 884 (Ky. App. 2009) (internal quotation marks and citations omitted).

Hammond's CR 60.02 motion should properly be characterized under CR 60.02(b) ("newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59.02"). As previously mentioned, a CR 60.02 motion based on grounds (a), (b), or (c) shall be made no more than one year after the judgment, order, or proceeding was entered or taken.

Hammond filed this motion in April 2023, almost seven years after his final Judgment of Conviction and Sentence was affirmed by the Kentucky Supreme Court. While the circuit court did not mention timeliness of the CR 60.02 motion in its Opinion and Order, an appellate court may affirm the trial court for any reason sustainable by the record. *Kentucky Farm Bureau Mut. Ins. Co. v. Gray*, 814 S.W.2d 928, 930 (Ky. App. 1991) (citing *Richmond v. Louisville & Jefferson County MSD*, 572 S.W.2d 601 (Ky. App. 1978)).

Hammond could argue that the timeliness standard provided by RCr 10.06 is different from CR 60.02. The criminal rule permits consideration of a

motion at a later time if "good cause" is shown. But good cause implies due diligence in seeking evidence as also required by CR 60.02.

Hammond's affidavit attached to his CR 60.02 motion stated he recently became aware of this newly discovered evidence about Clarkson. Hammond stated: "A year ago, I had not heard of Laron Clarkson or heard of his evidence." But Hammond to some degree contradicts himself by stating his defense team knew there was an unidentified juvenile at the common house who might have exculpatory evidence. Neither Hammond nor his counsel provided any affidavit attesting to prior efforts to discover Clarkson's identity.

Clarkson lived in the same vicinity. It should not have taken seven years for Clarkson to be discovered and his knowledge disclosed, even though it may have been necessary to compel Clarkson's testimony and deal with even more complicated impeachment of Clarkson and Bolin to get at the truth.

"An evidentiary hearing is not required to assess the reasonable time restriction inherent in CR 60.02 motions as such is left to the discretion of the Court." *Stoker v. Commonwealth*, 289 S.W.3d 592, 596 (Ky. App. 2009) (citation omitted). "Newly discovered evidence is evidence that could not have been obtained at the time of trial through the exercise of reasonable diligence." *Commonwealth v. Harris*, 250 S.W.3d 637, 642 (Ky. 2008) (citation omitted). *See also Sanders v. Commonwealth*, 339 S.W.3d 427, 437 (Ky. 2011) (holding that CR

60.02 allows appeals based upon claims of error that "were unknown and could not have been known to the moving party by exercise of reasonable diligence and in time to have been otherwise presented to the court"). Hammond's motion for a new trial was filed untimely pursuant to CR 60.02(b) and (f).

Regardless of timeliness, Hammond's motion is without merit. "[N]ewly discovered evidence that merely impeaches the credibility of a witness or is cumulative is generally disfavored as grounds for granting a new trial." *Foley v. Commonwealth*, 55 S.W.3d 809, 814 (Ky. 2000) (citation omitted). "The evidence must be of such decisive value or force that it would, with reasonable certainty, change the verdict or that it would probably change the result if a new trial should be granted." *Id.* (internal quotation marks and citations omitted).

The circuit court correctly noted Clarkson's account of being present at the common house is only corroborated by Bolin. As the circuit court observed: "[S]he was a confounding witness, who remembered no details during direct examination and contradicted herself several times on several points during her interviews, including who was present in the Ormsby Avenue house around the time of the murder." Even with Bolin's many contradictions, a jury convicted Hammond for his part in the murder.

Clarkson is also serving a lengthy prison sentence for robbery and murder, further casting doubt on his credibility. He has nothing to lose by offering

this belated account.  Clarkson did not provide a reasonable explanation for not coming forward to begin with and why he was now doing so.  Clarkson's testimony would not have changed the outcome of Hammond's trial, nor probably change the result if a new trial is granted.

## CONCLUSION

The circuit court did not err in denying Hammond's late and meritless motion for a new trial.  The Opinion and Order of the Jefferson Circuit Court is AFFIRMED.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Michael L. Goodwin
Louisville, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Courtney Hightower
Assistant Attorney General
Frankfort, Kentucky