RENDERED:  AUGUST 24, 2017
TO BE PUBLISHED

# Supreme Court of Kentucky

## 2016-SC-000693-TG

COMMONWEALTH OF KENTUCKY                                   APPELLANT


ON REVIEW FROM COURT OF APPEALS
V.                          CASE NO. 2016-CA-001153-MR
MEADE CIRCUIT COURT NOS. 92-CR-00042 AND 92-CR-00043


JEFFREY DEWAYNE CLARK                                        APPELLEES
AND GARR KEITH HARDIN


**OPINION OF THE COURT BY JUSTICE CUNNINGHAM**

**<u>AFFIRMING</u>**


This case began with the murder of a young woman in 1992, resulting in

the conviction of Jeffrey Dewayne Clark and Garr Keith Hardin (collectively,

"Appellees").  They were both sentenced to life imprisonment.  The issue

currently before this Court is whether the trial court abused its discretion in

subsequently vacating their convictions due to newly discovered evidence and

ordering a new trial.

### <u>Background</u>

Before addressing the merits of that issue, it is necessary to provide a

factual and procedural summary of the case:

On April 1, 1992, at approximately 7:00 p.m., nineteen-year-old Rhonda Sue Warford went to the Kroger grocery store near her Louisville home. When she arrived home around 7:30 p.m., she told her mother that as she was leaving the parking lot, a strange man harassed her and told her he wanted to marry her. Just after midnight, Rhonda left home and never returned. Family members surmised that she was going back to the grocery. Three days later, authorities found her dead body approximately fifty miles away in a remote area of Meade County. Police officers preserved the evidence at the scene, including the placement of plastic bags over the victim's hands. The medical examiner concluded that the victim's death was the result of multiple stab wounds following a close-range violent struggle, as evidenced by defensive wounds on the victim's hands. Evidence obtained at the autopsy included three hairs recovered from the victim's right hand and hairs found on the victim's red sweatpants. Fingernail scrapings were obtained as well.

At the time of the murder, Rhonda was dating [Appellee], Garr Keith Hardin. [Appellee], Jeffrey Dewayne Clark, was a close friend of Hardin's and had socialized with Rhonda's sister, Michelle, at one time. At the time of the murder, Hardin and Clark were 22 and 21 years old, respectively. Following discovery of the body, Rhonda's mother told police she believed that Rhonda, Michelle, and both [Appellees], were involved in Satanism. Thereafter, the authorities zeroed in on [Appellees] as suspects in the murder.
...

The physical evidence the Commonwealth asserted linked the [Appellees] with the murder consisted of (1) a single fingerprint matching the victim's which was lifted from the interior back seat passenger window of Clark's car; and (2) the one hair described as similar to Hardin's found on the victim's red sweatpants.
...

In 2009, [fourteen years after Appellees' conviction,] the Innocence Project, Inc. and the Department of Public Advocacy Kentucky Innocence Project (hereinafter collectively referred to as the

2

Innocence Project) agreed to represent Hardin and Clark, respectively, to secure DNA testing of the hairs found on the victim, as well as the victim's fingernail scrapings.

...

[T]he trial court denied [Appellees'] motion for release of the evidence for DNA analysis. [Appellees] appealed this ruling to the Court of Appeals and we granted transfer.

*Hardin v. Commonwealth*, 396 S.W.3d 909, 910-13 (Ky. 2013).

On appeal, we held that Appellees "are entitled to the testing they seek. Accordingly, the order of the Meade Circuit Court denying [Appellees'] motion is reversed and the case remanded for further proceedings consistent with this opinion." *Id.* at 915. In so holding, we also noted that Appellees were convicted "based on highly circumstantial evidence." *Id.* at 910. Upon remand, the circuit court held an evidentiary hearing on the claims raised in Appellees' CR 60.02 motion. After considering oral and written arguments on behalf of all parties, the court granted that motion and vacated the Appellants' convictions. The Commonwealth appealed that ruling to the Court of Appeals. We granted transfer.

## Standard of Review

"[I]n order for newly discovered evidence to support a motion for new trial it must be 'of such decisive value or force that it would, with reasonable certainty, have changed the verdict *or* that it would probably change the result if a new trial should be granted.'" *Commonwealth v. Harris*, 250 S.W.3d 637, 640–41 (Ky. 2008) (emphasis added and quotation omitted). "We review the denial of a motion for a new trial to determine whether such decision was an

3

abuse of discretion." *Bedingfield v. Commonwealth*, 260 S.W.3d 805, 810 (Ky. 2008) (citations omitted). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999). This is a difficult standard for the Commonwealth to satisfy.

## Analysis

The Commonwealth argues that the alleged newly discovered evidence does not warrant a new trial. More precisely, the Commonwealth claims that the evidence presented by the prosecution at trial is more than sufficient to convict Appellees, and that Appellees' post-trial confessions also weigh in favor of precluding a new trial. In contrast, Appellees argue that several key pieces of evidence must now be reconsidered in light of newly discovered information, and that a new trial is warranted. For the forgoing reasons, we agree with the Appellees that the trial judge did not abuse his discretion in ordering a new trial.

### *Appellees' Argument*

There are two items of physical evidence that Appellees argue justify a new trial. First, modern DNA testing of a hair found on the victim's pants excluded Appellees as the source of the hair. Secondly, an incriminating blood-stained rag was presented at trial as bearing the blood of the victim. In fact, modern DNA testing indicated that Hardin was the likely source of the blood, just as he proclaimed at trial. A third factor at issue here does not involve

4

physical evidence. However, it involves the now highly questionable trial testimony of a police officer involved in the case.

A forensic expert testified at trial on behalf of the Commonwealth that there was a high probability that the hair discovered on the victims' sweatpants matched Hardin's hair, thus placing him at the murder scene. There has been much argument in the parties' briefs concerning the expert's use of the word "match" when testifying at trial. The Commonwealth argues that their expert did not mean that the hair "matched" Hardin's hair with complete certainty. However, it is clear from the record that the hair evidence was the only thing placing Appellees at the scene of the crime. The Commonwealth's expert presented its forensic evidence to the jury in a manner that was highly inculpatory by linking the hair to Hardin. During opening and closing arguments, the prosecutor also attempted to persuade the jury that the hair came from Hardin. Semantics aside, it was an integral part of the prosecutor's theory of the case, that the hair was a "match".

In *Bedingfield*, we discussed the specific importance of DNA evidence when reviewing a similar issue:

> For clarity's sake we emphasize: the presence of sperm which DNA testing proves did not belong to Appellant does not exonerate him; however, the presence of this new evidence does cast a long shadow and assuredly merits consideration in the form [of] a new trial. It cannot be overlooked that in Appellant's initial trial, all other arguments were enhanced and corroborated by the supposition that the sperm found belonged to Appellant. Indeed, this theme was central to the Commonwealth's prosecution. Because the technology was not available for Appellant to refute

that claim, Appellant was left to rely on his word against that of the Commonwealth. This new evidence is substantial, if not pivotal, and we are inclined to believe that it is precisely the type of evidence that is envisioned by the rule and that may change the result if a new trial were granted. (Citations omitted).

*Bedingfield*, 260 S.W.3d at 814-15.

Having so held, we vacated Bedingfield's sentence pursuant to CR 60.02 and granted his motion for a new trial based upon newly discovered evidence.

Similar to *Bedingfield*, the forensic evidence presented at Hardin's trial "enhanced and corroborated by the supposition that the [hair] found belonged to [Hardin]." *Id.* As previously noted, the hair was the only physical evidence presented by the Commonwealth connecting Appellees to the crime scene. However, modern DNA testing has excluded Hardin as a source of the hair. Based on this new information, the trial court determined that the Commonwealth's evidence and argument at trial concerning the hair was "inaccurate and materially misleading." The trial court also noted that "the FBI announced in 2013 that testimony that a crime scene hair is a 'match' to a particular defendant's hair through microscopic hair comparison implies a level of certainty that exceeds the limits of science." As such, the trial court concluded that the new DNA evidence "undermines the credibility of the Commonwealth's case." It stretches the limit of our imagination to say it was an abuse of discretion.

The second item of evidence is a blood-stained cloth retrieved by police officers from Hardin's home. The Commonwealth's theory of the case was that

6

Hardin and Clark were devil worshipers and that their motive for the killing was Appellees' involvement with Satanism. In his opening and closing statement, the prosecutor argued that Hardin "had been sacrificing animals and he had gotten to where he wanted to do humans." To support this claim, the Commonwealth argued to the jury that the cloth, along with a broken chalice, was used in an animal sacrifice and that the blood on the rag came from the sacrificed creature. While there was some testimony supporting the contention that Hardin sacrificed animals, the blood-stained cloth and chalice were the only physical evidence presented by the Commonwealth in support of that theory. However, Hardin testified at trial that he cut his hand after dropping the chalice and that the blood on the cloth was his own.

During the July 2015 evidentiary hearing, a DNA forensic expert testified that, within a reasonable scientific certainty, the blood on the rag came from Hardin. This type of DNA testing was unavailable at the time of trial. As such, the trial court determined that this new evidence "significantly undermines the Commonwealth's theory at trial of this murder and, in particular, the motive for the murder."

Lastly, Appellees argue that the trial testimony of Louisville Metro Police Detective Mark Handy was highly dubious and cannot be trusted. Handy testified at trial that Hardin told him that he had killed animals and "got tired of looking at animals and began to want to do human sacrifices." Hardin denied these claims. New evidence revealed that Handy testified falsely under oath concerning an unrelated 1993 murder case, just several weeks before he

testified at Appellees' trial. The defendant in that 1993 case, Edwin Chandler, was wrongfully convicted of murder based at least in part on a confession that Handy falsely attributed to him. Chandler was exonerated in 2009 due to newly discovered forensic evidence. Louisville Metro Police Sergeant Denver Butler recommended that Handy be criminally investigated for his conduct in that case.

While involved in another investigation in 1992, it is undisputed that Handy erased an eyewitness' initial taped statement and recorded over it with a second statement. When testifying under oath in that case, however, Handy stated that he did not erase or copy over any tapes. The trial court in the present case concluded that "this new evidence discredits the integrity of the police investigation [and] undermines the credibility of the Commonwealth."

### The Commonwealth's Argument

The Commonwealth argues that additional physical evidence presented at trial was sufficient to convict Appellees. This includes a single fingerprint matching the victim's which was lifted from the interior back seat passenger window of Clark's car. However, we have previously summarized this evidence as follows: "[a]s to the fingerprint, it was undisputed that the victim, who was dating Hardin and was acquainted with Clark, had been in Clark's car on a number of occasions." Therefore, this evidence is not dispositive of the present issue.

The Commonwealth further asserts that the trial court did not give proper weight to Clifford Capps' testimony. This testimony includes two alleged

pretrial confessions by Clark to Capps while incarcerated in the Meade County Detention Center. Shortly after the jury reached a verdict, Clark became aware of a letter written by Capps to another inmate urging him to corroborate his testimony. Clark filed a writ of habeas corpus with the United States District Court claiming prosecutorial misconduct due to the intentional suppression of evidence favorable to the accused, which was denied.

On appeal, the United States Court of Appeals held Clark was unable to provide clear and convincing evidence that the prosecution knew of the letter during trial. The court then denied a new trial based on the letter because it was "ambiguous as to Clark's guilt or innocence." *Clark v. O'Dea*, 257 F.3d 498, 506 (6th Cir. 2001), *certiorari denied* 535 U.S. 938 (2002)). The court further conceded that the letter could have been used to impeach Capps' testimony at trial, but that alone is insufficient to conclude with "reasonable probability that . . . the result of the proceeding would have been different." *Clark*, 257 F.3d at 505 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). Though the letter alone is insufficient to meet the standard for a retrial, it evolves as a cumulative piece of evidence which combines with the additional evidence previously cited. It definitely undermines the incriminating Capps testimony. Upon retrial, nothing is barring Capps from testifying once again at the discretion of the trial court.

The Commonwealth also cites Hardin's sworn testimony before the Parole Board wherein he admitted to his and Clark's involvement in the murder. Clark, however, initially maintained his innocence during his Parole Board

9

hearings, but eventually admitted to helping Hardin move the victim's deceased body. According to the Commonwealth, Hardin's post-trial admissions obviate the need for a new trial. In support, the Commonwealth cites *District Attorneys v. Osborne*, 557 U.S. 52, 59-60 (2009). *Osborne* is a civil case that has little to nothing to do with resolving the present issue. It does not stand for the broad proposition that post-trial confessions are automatically admissible upon retrial. Moreover, Appellees' confessions were elicited more than a decade after their convictions.

Appellees also claim that questioning by the Parole Board members was coercive, basically telling them that they would not be paroled unless they confessed. While we are fully aware that confession, acceptance and remorse are valuable steps to rehabilitation, we see little merit in insincere and contrived admissions, which are induced solely by the yearning to be free. One example is the previously discussed case of Edwin Chandler. While imprisoned, Chandler confessed during a Parole Board hearing. He was subsequently exonerated by newly discovered DNA evidence. An abundance of scholarly literature captures the problematic nature of such confessions. *E.g., Daniel S. Medwed, The Innocent Prisoner's Dilemma: Consequences of Failing to Admit Guilt at Parole Hearings*, 93 Iowa L. Rev. 491 (2008).

We cannot say that the trial judge abused his discretion in discounting the statements of Hardin to the parole board. We think a jury would also be skeptical of such a "confession." The thorny evidentiary issues of both the

10

admission of the statement to the parole board, as well as the means to undermine its credibility by the Appellees, await another day.

Next, the Commonwealth claims that the effect of ordering a new trial will present enormous practical difficulties. In support, the Commonwealth cites that several witnesses are now dead and that introducing Appellees' statements to the Parole Board would require explaining to the jury that they were both previously in prison and seeking parole. As to the latter claim, the Commonwealth's argument is premised on the assumption that Appellees' alleged confessions would be admissible in a new trial. That is a decision for the trial court. The Commonwealth's claim of witness unavailability is also unpersuasive. In the present context, the purpose of CR 60.02 and our accompanying case law is to ensure that those individuals convicted of a crime receive the due process that is afforded them under the law. While the Commonwealth's practical claims may be valid, they cannot be controlling or even pivotal to our decision here.

Under this rickety standard presented by the Commonwealth, this Court would be prevented from remanding any case if re-trial would be difficult or impossible, regardless how egregiously unfair the trial might have been.

In considering the new evidence at issue in light of our deferential standard of review, we cannot conclude that the trial court abused its discretion in vacating Appellees' convictions and in granting a new trial. Therefore, both Appellees are entitled to a new trial.

11

## Conclusion

For the foregoing reasons, we hereby affirm the order of the Meade Circuit Court vacating Appellees' convictions and ordering a new trial.

All sitting. Minton, C.J.; Hughes, Keller, Venters, Wright, JJ., concur. VanMeter, J., dissents by separate opinion.

VANMETER, J., DISSENTING: I respectfully dissent. In my view, sufficient probative evidence existed to support the convictions of Clark and Hardin, such that neither the trial court nor this Court can state that the new evidence in this case is "of such decisive force that it would, **with reasonable certainty**, have changed the verdict or that it would **probably** change the result if a new trial should be granted." *Commonwealth v. Harris*, 250 S.W.3d 637, 640-41 (Ky. 2008) (emphasis added). As a result, the trial court's decision to vacate the convictions and grant Clark and Hardin a new trial was an abuse of discretion. *Bedingfield v. Commonwealth*, 260 S.W.3d 805, 810 (Ky. 2008). I would vacate the Meade Circuit Court's order vacating Clark's and Hardin's convictions and ordering a new trial.

COUNSEL FOR APPELLANT:

Andy Beshear
Attorney General of Kentucky

Perry Thomas Ryan
Assistant Attorney General


COUNSEL FOR APPELLEE, JEFFREY DEWAYNE CLARK:

Linda Andrea Smith
Department of Public Advocacy

Amy Robinson Staples
Assistant Public Advocate


COUNSEL FOR APPELLEE, GARR KEITH HARDIN:

Larry David Simon
The Simon Law Office

Barry C. Scheck
Innocence Project

Seema Saifee
Innocence Project