RENDERED: DECEMBER 19, 2024
TO BE PUBLISHED

# Supreme Court of Kentucky

2024-SC-0199-KB
2024-SC-0200-KB

IN RE: PERRY THOMAS RYAN

&

IN RE: DAVID MICHAEL WILLIAMS

IN SUPREME COURT

## **OPINION OF THE COURT**

These attorney disciplinary cases against Perry Thomas Ryan and David Michael Williams[1] arise from their roles in representing the Commonwealth and prosecuting Garr Keith Hardin and Jeffrey Dewayne Clark who were convicted by a jury of the 1992 murder of Rhonda Warford. After nearly 20 years of post-conviction proceedings, the Meade Circuit Court ordered a new trial, based in part upon new DNA testimony, and that order was affirmed by this Court. *Commonwealth v. Clark,* 528 S.W.3d 342 (Ky. 2017). The Commonwealth, acting through Commonwealth Attorneys Ryan and Williams, later obtained additional indictments against Clark and Hardin for kidnapping,

---

[1] Perry Thomas Ryan was admitted to the practice of law in the Commonwealth on November 4, 1988. His KBA member number is 82555 and his bar roster address is 100 Maplewood Drive, Georgetown, Kentucky 40324. David Williams was admitted to the practice of law in this Commonwealth on May 3, 1982. His KBA member number is 77100 and his bar roster address is 2442 Lewis School Road, Leitchfield, Kentucky 42754.

which originated from the sequence of events leading to Warford's murder, and perjury based on inconsistencies in statements the defendants made in trial court proceedings and before the parole board. The trial court ultimately dismissed those new indictments based on vindictive prosecution. Subsequently, Clark and Hardin's defense team filed a bar complaint against Ryan and Williams and the Inquiry Commission ultimately issued four-count charges against both Ryan and Williams in December 2019.

These cases proceeded through the disciplinary process for several years and have included a petition for writ of mandamus to this Court in 2022. The Trial Commissioner, in a confusing opinion, ultimately found Ryan and Williams guilty on all four counts. The Board of Governors disagreed and concluded that no discipline was warranted for either prosecutor. Bar Counsel appealed to this Court.

In reviewing this case, we recognize the important role of prosecutors in representing the Commonwealth, and the duties they have to both the public and our justice system. This Court takes seriously our role to guard against abuse of the criminal process and ensuring that attorneys abide by all rules governing the practice of law in this Commonwealth.

**FACTS AND PROCEDURAL HISTORY**

In 1992, Rhonda Warford was murdered in Meade County, Kentucky. Jeffrey DeWayne Clark and Garr Keith Hardin were convicted for Warford's murder following a joint seven-day jury trial. The defendants were sentenced to life in prison and their convictions were affirmed on direct appeal, *Hardin v.*

2

*Commonwealth*, 95–SC–000461–MR (Ky. Aug. 29, 1996); *Clark v. Commonwealth*, 95–SC–000453–MR (Ky. Oct. 2, 1997) and upheld in post-conviction proceedings. *E.g., Clark v. O'Dea*, 257 F.3d 498 (6th Cir. 2001) (federal habeas corpus); *Hardin v. Commonwealth*, 2001-CA-1782-MR, 2003 WL 21106138 (Ky. App. May 16, 2003) (Rule of Criminal Procedure 11.42 ineffective assistance of counsel).

In 2009, fourteen years after Clark and Hardin's convictions, the Innocence Project agreed to represent Clark and Hardin to secure DNA testing of hairs found on the victim, as well as the victim's fingernail scrapings. The trial court denied the motion, finding that DNA testing could only serve to incriminate a third party, but, in light of the independent evidence against Clark and Hardin, it would not exonerate either of them. Clark and Hardin then appealed and on April 25, 2013, this Court overturned the trial court and ordered the release of the physical evidence for DNA testing. *Hardin v. Commonwealth*, 396 S.W.3d 909 (Ky. 2013). The Court's opinion reversing the trial court stated,

> First of all, we are mystified, if not amazed, that the Commonwealth has such little interest in the possibility that DNA testing might lead to the prosecution and conviction of a guilty person heretofore uncharged and now at large upon the Commonwealth.

*Id.* at 915.

As a result, the evidence was released for testing. The Meade Circuit Court conducted a two-day evidentiary hearing in July 2015 to discuss the results of the additional testing. The trial court concluded, in part, that the

3

post-conviction DNA evidence revealed the hair that was previously represented as "matching" Hardin's hair during the 1995 trial did not come from Hardin. Because the trial court opined that this new evidence was relevant, material, and exculpatory, the trial court granted the defendants' motion for a new trial in July 2016.[2] The Commonwealth appealed that ruling to the Court of Appeals and this Court granted transfer.

While the appeal to this Court was pending, proceedings continued in the trial court. At some point after the July 2015 evidentiary hearing, prosecutors Perry Ryan and David Williams, representing the Commonwealth, compared several statements that Clark and Hardin made under oath during the evidentiary hearing and discovered they had been untruthful. The attorneys believed that Clark and Hardin gave sworn statements that were irreconcilable with previous statements made to the parole board. They also learned that Hardin confessed to the crimes during parole board hearings in 2008 and 2014, and that the defendants provided details of how they deceived Warford into getting in Clark's car to the parole board.

---

[2] The defendants also conducted new DNA testing on a blood-stained cloth and broken chalice seized from Hardin's bedroom. At trial, the Commonwealth asserted its theory that Clark and Hardin were involved in satanic worshipping, which motivated the murder. To prove that Hardin killed small animals and wanted to advance to human sacrifices, the Commonwealth introduced the chalice and cloth and proposed the blood originated from performing a ritual animal sacrifice. Hardin testified at trial that the blood on the broken chalice and cloth was his. The later DNA testing revealed the blood was in fact Hardin's and he was telling the truth in his trial testimony. In addition, the defendants introduced evidence that a police detective, who conducted most of the interviews with Clark and Hardin, was later criminally investigated for alleged misconduct in another case, which undermined his credibility and testimony in the murder trial.

In February 2014, while before the parole board, Hardin admitted that he stabbed Warford and implicated Clark in the crime. Attorney Williams learned of Hardin's confession because the victim's mother, Mary Warford, attended the parole hearing and afterward advised the Commonwealth's Attorney that Hardin had fully confessed to the crime. Hardin admitted that they did not tell Warford where they were going when they picked her up in Clark's car. A parole board member stated "So it wasn't – you didn't force her to do it. Was it – 'We're going to pick you up and ride around?'" Hardin affirmed the statement. In one of their pleadings, Ryan and Williams asserted that during the 1995 trial, the Commonwealth had no evidence that either defendant used deception to lure Warford into Clark's car when they drove her to Meade County to kill her. It was not until 2014 when they learned that Clark and Hardin deceived Warford by not revealing their true criminal purpose in moving her, and Ryan and Williams asserted that such conduct qualifies under Kentucky's statutory definition of "restrain" and "kidnapping." *See* Kentucky Revised Statute (KRS) 509.010 and 509.040. Ryan and Williams further explained that until the court granted a new trial, they did not believe it was necessary to add the kidnapping charge to the original charges because Clark and Hardin were already serving life sentences.

After the 2015 evidentiary hearing, Ryan and Williams obtained copies of the 2006 parole board hearings from Warford's mother. During Clark's hearing, he admitted that he helped Hardin move Warford's body after Hardin killed her, and that he knew Hardin planned to kill Warford because Hardin

5

believed she was pregnant with his child. During Hardin's hearing, he confessed to killing Warford and explained that the crime was partially motivated by satanism.

In sum, Ryan and Williams explained the chronology of the defendant's alleged perjury: (a) in 1992 during police interviews, both defendants denied the murder; (b) during the 1995 trial, both defendants denied the murder; (c) during their 2006 parole board hearings, Clark admitted foreknowledge of the crime (Hardin stated he was going to kill Warford because she was allegedly pregnant with his child) and admitted to moving her body; (d) during his 2014 parole board hearing, Hardin confessed to the murder, and (e) during the 2015 evidentiary hearing, both lied about various aspects of the crime. Therefore, the attorneys opined that there was probable cause to believe both Clark and Hardin committed perjury during the 2015 evidentiary hearing.

In September 2016, Ryan and Williams presented new indictments for perjury and kidnapping to the grand jury. Ryan and Williams believed that a newly impaneled jury should be given the opportunity to review the full scope of Clark and Hardin's crimes. Additionally, Ryan and Williams believed Clark and Hardin posed a substantial danger to public safety and that the new charges might delay their parole.

As to the kidnapping charge, Williams played an audio recording from Clark's February 2014 parole board hearing in which he stated he and Hardin called Warford to go out driving and picked her up. Ryan explained Kentucky law on kidnapping, and when asked by Williams whether what Clark and

6

Hardin did fell within that definition, Ryan stated "yes." There were no witnesses who testified before the grand jury. The grand jury indicted Clark on one count of kidnapping and one count of perjury, and indicted Hardin with one count of kidnapping and one count of perjury. In response to the new indictments, defendants filed motions to dismiss for vindictive prosecution, prosecutorial misconduct, and failure to call a sworn witness, in addition to a motion to disqualify Ryan as prosecutor, alleging that he acted as a witness before the grand jury.

On March 13, 2017, Williams re-presented the recorded evidence to a grand jury, partly to address some of the issues raised by the defendants in their motions—namely the assertion that Ryan should not have served as a witness. This time, Ryan was not present. Williams explained the grand jury process and that nothing he said to the grand jury constitutes evidence, but rather background information intended to assist the grand jury in determining whether a reasonable basis existed to return an indictment. Williams provided a brief factual background of the case by asking the clerk to read a prior opinion of the United States Court of Appeals for the Sixth Circuit. Similar to the 2016 grand jury proceedings, Williams then played the video recordings of portions of the testimony given by Clark and Hardin during the July 2015 evidentiary hearing and statements made to the parole board. The second grand jury returned superseding indictments against both defendants,

7

charging Clark with three counts of perjury[3] and one count of kidnapping, and charging Hardin with one count of perjury and one count of kidnapping.

In June 2017, this Court heard oral arguments on the Commonwealth's appeal of the order granting a new trial. The Court later issued an Opinion affirming the trial court, holding that the Commonwealth had not established its burden of proving that the trial court abused its discretion in granting a new trial.[4] *Clark,* 528 S.W.3d at 348. On October 3, 2017, Williams requested to be removed from the case due to the death of his wife, and the Attorney General substituted two special prosecutors to take over the case. At this point, Ryan and Williams had no further involvement with the case.

The trial court dismissed the perjury and kidnapping indictments on January 19, 2018, stating that Williams and Ryan were vindictive in presenting the indictments to the grand jury. The trial court reasoned that the addition of kidnapping charges was "presumptively retaliatory" and a mere effort to increase the penalty to which defendants were exposed following the defendants' successful motion for a new trial. Further, the trial court opined that the new charges were based on the defendants' unsworn and unreliable

---

[3] The superseding indictment contained two additional perjury charges that are inconsequential to this appeal. Bar Counsel focuses on the original perjury charge against Clark, which also appeared in the superseding indictment. The two other perjury charges were based on Clark lying to the parole board about not having committed any offenses while incarcerated, when in fact he was disciplined for selling marijuana, and additional statements made before the parole board about giving the victim's family closure.

[4] Now Chief Justice VanMeter dissented, opining that the trial court abused its discretion in vacating the convictions and granting a new trial because the convictions were supported by sufficient probative evidence.

statements to the parole board, which they likely made to secure freedom, not to admit guilt. The trial court also noted that the kidnapping charge arose from the same nucleus of facts as the original indictment in 1992.

Additionally, the trial court referenced Ryan's closing argument made during the hearing on the motion for a new trial, during which Ryan stated the defendants should feel fortunate that they were parole eligible because a new trial could subject them to a kidnapping charge as their actions constituted restraint under Kentucky law. The trial court also found that Clark's perjury charges were false represented by Williams to the grand jury, which further supported a presumption of vindictiveness.

Meanwhile, on January 9, 2018, the special prosecutors appointed to the case moved to dismiss the murder case without prejudice. The motion recognized that there was little physical evidence to link either defendant to the victim's body or the crime scene, but that, taking the evidence as a whole, it was reasonable for the jury to convict both men in 1995. Additionally, after both men were convicted, they gave incriminating statements to the parole board during their hearings in 2006, and again in 2014. But the Commonwealth explained that subsequent discoveries about the reliability of witness testimony[5], along with the development of more reliable scientific

---

[5] During the murder trial, a police detective and a jailhouse informant testified and stated that Hardin and Clark, respectively, made various admissions to them. At the time of the special prosecutors' motion to dismiss the murder case, the detective had been investigated for falsifying at least one other confession, and the informant subsequently sent a letter to a fellow inmate that could be reasonably interpreted as encouraging the fellow inmate to falsely testify that Hardin also confessed to him.

testing, led the Commonwealth to conclude that there was no longer sufficient evidence by which a reasonable jury could conclude the defendants are guilty beyond a reasonable doubt. The trial court dismissed the murder charges without prejudice.

The defendants' counsel filed bar complaints against Ryan and Williams in early 2019 based on their actions in procuring the additional kidnapping and perjury indictments and the trial court's vindictive prosecution finding. The Inquiry Commission issued a four-count charge against both Ryan and Williams, alleging violation of four rules.

Count I alleges violation of Supreme Court Rule (SCR) 3.130(3.1), which states "[a] lawyer shall not knowingly bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law." The Inquiry Commission relies on the trial court's vindictive prosecution order holding that Ryan and Williams committed vindictive prosecution by bringing the kidnapping and perjury charges against the defendants. The Inquiry Commission specifically quoted the trial court's order: "The record shows that the Commonwealth's initiation of new charges was not based on any additional factual investigation or legal analysis, but because Defendants exercised their constitutional and statutorily-protected right to challenge their original convictions and won."

Count II alleges violation of SCR 3.130(3.4)(f), which states "[a] lawyer shall not . . . present, participate in presenting, or threaten to present criminal

10

or disciplinary charges solely to obtain an advantage in any civil or criminal matter . . . ." The Inquiry Commission asserts that Ryan and Williams violated this rule by threatening to indict and later indicting defendants on new charges after the trial court vacated their convictions and granted a new trial.

Count III alleges violation of SCR 3.130(3.8)(a), which states in pertinent part "[t]he prosecutor in a criminal case shall . . . refrain from prosecuting a charge that the prosecutor knows is not supported by probable cause . . . ." The Inquiry Commission asserts that Ryan and Williams violated this rule by prosecuting multiple charges of perjury and kidnapping that the trial court ultimately concluded were "not the product of good faith" and vindictive.

Count IV alleges violation of SCR 3.130(8.4)(c), which states "[i]t is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit, or misrepresentation . . . ." The Inquiry Commission alleges Ryan and Williams violated this rule by falsely representing evidence to the Meade County grand jury to obtain a perjury charge against Clark, as found by the Meade Circuit Court.

After Ryan and Williams filed Answers, the matter was assigned to a trial commissioner. One of the preliminary issues presented to the Trial Commissioner was the preclusive effect of the circuit court's January 2018 vindictive prosecution order. The parties disputed whether Ryan and Williams were collaterally estopped from contesting the trial court order or presenting evidence to rebut the findings set forth therein. The Trial Commissioner ruled that Ryan and Williams were precluded from re-litigating the issues in the

11

January 2018 order and, as a result, in August 2021, the Trial Commissioner conducted a hearing which excluded Ryan's and Williams' proposed witnesses. Ryan and Williams took testimony from Judge Bruce T. Butler, who had issued the vindictive prosecution order, and Christopher Cohron, Commonwealth's Attorney for the 8th Judicial Circuit, who was to testify about the Kentucky grand jury process, by avowal.

The Trial Commissioner determined that Ryan and Williams violated the rules, as charged, and recommended a sanction of a 180-day suspension, with 30 days to serve and the balance probated for 2 years. Ryan and Williams appealed and the Board of Governors remanded the matter to the trial commissioner for a new evidentiary hearing, concluding that the application of collateral estoppel was error. The Board reasoned that the Trial Commissioner, as initial fact finder, should fully hear and consider all testimony and that each party should be afforded the opportunity to effectively cross-examine witnesses and fully present their case.

Following entry of the Board's Order, Bar Counsel filed a Petition for Writ of Mandamus. Bar Counsel argued that the Board's remand order was too broad in that it ordered a completely new hearing. In October 2022, this Court issued an Opinion concluding that the Board's Order of remand was not too broad, and anticipated that on remand, the Trial Commissioner would be limited to hearing live testimony only from the witnesses who testified by avowal. The Court also held that Bar Counsel failed to satisfy the writ standard, reasoning that the time and expense of additional proceedings does

12

not constitute great injustice and irreparable injury, and that Bar Counsel has an adequate remedy by appeal because the Court has final authority over attorney discipline and through de novo review. Therefore, the Court denied relief.

In May 2023, the Trial Commissioner conducted a supplementary evidentiary hearing. The KBA only introduced the January 2018 vindictive prosecution order in support of its case. Ryan and Williams both testified. The Trial Commissioner also heard testimony from Judge Butler, who stated that he did not believe Ryan and Williams did anything unethical, and that he believed the additional kidnapping and perjury charges were vindictive but did not believe the indictments were brought in bad faith or without probable cause. The Trial Commissioner again found that Ryan's and Williams' misconduct violated the four rules as charged and recommended the same discipline as in his first report, 180-day suspension, 30 days to serve with the balance probated for 2 years.

Ryan and Williams appealed to the Board of Governors. After oral argument and careful review, the Board concluded that the findings of the Trial Commissioner were not supported by substantial evidence and were clearly erroneous as a matter of law. The Board voted fourteen to three to reject the second report of the Trial Commissioner and consider the matter on a de novo basis. For each Count, the Board voted as follows:

Count I: Guilty (0); Not Guilty (17)
Count II: Guilty (9); Not Guilty (8)
Count III: Guilty (0); Not Guilty (17)
Count IV: Guilty (0); Not Guilty (17)

13

Because the requisite number of guilty votes is eleven, the Board was unable to make a recommendation on discipline as to Count II. Bar Counsel filed a notice of review with this Court pursuant to SCR 3.370(8).

## ANALYSIS

In attorney disciplinary proceedings, the Kentucky Bar Association (KBA) bears the burden of proving the facts by a preponderance of the evidence. SCR 3.330(4). Findings of fact by a Trial Commissioner and the Board of Governors are merely advisory. *Ky. Bar Ass'n v. Barry,* 626 S.W.2d 632, 633 (Ky. 1981). "Final decisions of guilt and punishment can only be made by the Supreme Court, and it is done on the basis of a de novo consideration of pleadings and trial review." *Ky. Bar Ass'n v. Thornton,* 279 S.W.3d 516, 518 (Ky. 2009) (citation omitted). The Court makes an independent review of the record and independent findings of fact and may "enter such orders or opinion as it deems appropriate on the entire record." *Ky. Bar Ass'n v. Maze,* 397 S.W.3d 891, 897 (Ky. 2013) (citation omitted). As a result, this Court conducted a thorough review of the history of this case, the grand jury proceedings, and the pleadings. Following is an analysis of each Count in turn.

## Count I

Count I alleges that Ryan and Williams violated SCR 3.130(3.1), which prohibits a lawyer from knowingly bringing or defending a proceeding unless there is a non-frivolous basis in law or fact for doing so. The Trial Commissioner determined that Ryan and Williams violated this rule by appearing before the grand jury with no sworn witnesses and, in effect,

14

testifying themselves. The Board unanimously concluded that Ryan and Williams were not guilty of violating this rule and opined that they conducted a thorough investigation before bringing the kidnapping and perjury charges to the grand jury. It further found that the new charges were based upon factual evidence discovered by Ryan and Williams after the 2015 evidentiary hearing. Both Ryan and Williams testified that they conducted factual and legal analysis to establish probable cause. Additionally, neither Ryan nor Williams were sworn in as witnesses, and gave only brief factual background on the case and explained the law on kidnapping and perjury to both grand juries. They also played the defendants' sworn statements and contrasted them with the parole board hearings where they made inconsistent statements.

Bar Counsel highlights statements made by Williams to the grand jury, including his response to a grand juror question in which he stated, "it looks like they killed her, drug her up in the woods and then they never went back." Bar Counsel also takes issue with Williams stating "I couldn't give you a lot of detail except I think they found a pool of blood in one area and they could see where the body had been dragged to the fence which is what Clark had said and held to." But these explanations have little to no bearing on the charges before the grand jury, which were perjury and kidnapping. Bar Counsel argues that Ryan and Williams' statements to the grand juries went far beyond providing a brief factual background, as described by the Board, and instead asserts that Ryan and Williams told the grand jury what to believe. It is also important to note that a prosecutor's role, as an advocate for and

15

representative of the Commonwealth, is to prosecute criminal offenses. By playing the actual recorded statements of the defendants, Ryan and Williams permitted the grand jury to compare the hearing testimony with the defendants' earlier statements and develop their own conclusions based on the law and evidence presented.

While both Ryan and Williams commented on the evidence presented, and explained the law on kidnapping and perjury, the grand jury heard the direct evidence itself. Bar Counsel takes issue with the fact that no witnesses were called during the 2016 grand jury proceedings; however, no witnesses were necessary. This is particularly true considering that the parole board hearings were verified and authenticated by the sworn affidavits of the parole board members. The grand jury heard portions of the 2016 evidentiary hearing during which Clark gave sworn testimony and stated he had never confessed or said he committed the murder. Williams then stated "[t]hey asked him if he had ever admitted he had any involvement in this crime, and he said no." Williams proceeded to play a recording from Clark's 2006 parole board appearance during which he admitted to helping Hardin move the victim's body after she was already dead.

Williams equated Clark's statement that he helped Hardin move the body to being involved with the murder, which is a reasonable interpretation. While moving a body is arguably not part of the actual death, it could rationally be viewed as part and parcel in the overall crime. While Williams interpreted the evidence as part of a recommendation, it was ultimately the jury's role to

16

determine whether the evidence presented constituted probable cause for the perjury charge. Significantly, two separate grand juries heard the evidence and issued indictments. "An indictment returned by a legally constituted and unbiased grand jury . . . if valid on its face, is enough to call for trial of the charge on the merits." *Costello v. U.S.*, 350 U.S. 359, 363 (1956).

Both Ryan and Williams testified before the Trial Commissioner that they conducted a thorough investigation before bringing the kidnapping and perjury charges. They researched relevant law, and consulted other prosecutors and a former trial court judge before deciding to present the charges to a grand jury. This is evidenced by their possession of the recordings from the 2015 evidentiary hearing, as well as the audio recordings of the parole board hearings. When new trial was granted, Ryan and Williams believed it became necessary for any new jury to hear the entire scope of the evidence as it was then known. Additionally, Ryan and Williams brought the additional charges for kidnapping and perjury before this Court ruled on the Commonwealth's appeal from the order vacating the convictions and ordering a new trial. Therefore, it was not absolute that a new trial would indeed occur.

As to the kidnapping charge, although the crime occurred in 1992, the prosecutors state that they learned, for the first time in 2014, that the defendants deceived the victim without revealing their true criminal purpose in transporting her, and such conduct qualifies as kidnapping under Kentucky law. Bar Counsel admits that it is possible that the defendants' actions are encompassed by the definition of restraint under Kentucky law but takes issue

with the timing of the additional charges. As Ryan and Williams point out, KRS 505.040 requires a prosecutor to wait until a judgment has been vacated before instituting any new charges after a defendant has been convicted. The murder convictions were not vacated until July 14, 2016. Additionally, Ryan and Williams stated that they spent time researching caselaw and statutes to determine whether additional indictments were appropriate.

SCR 3.130(3.1) prohibits a lawyer from instituting a proceeding unless they have a nonfrivolous basis in law and fact for doing so. Bar Counsel has failed to point to any evidence in the record that Ryan and Williams sought the perjury and kidnapping indictments without a legal and factual basis. Therefore, this Court agrees with the Board and finds that the KBA has failed to establish the allegations in Count I by a preponderance of the evidence.

### Count II

Count II alleges that Ryan and Williams violated SCR 3.130(3.4)(f), which provides "[a] lawyer shall not . . . present, participate in presenting, or threaten to present criminal or disciplinary charges solely to obtain an advantage in any civil or criminal matter . . ." by threatening to indict and later indicting Clark and Hardin on new charges after the trial court vacated the murder convictions. While the Trial Commissioner determined that Ryan and Williams violated this rule, the Board was split (nine guilty votes and eight not guilty votes).

In a footnote in their response to the defendants' motion for a new trial filed on June 18, 2015, Ryan and Williams stated,

18

> Clark and Hardin were not tried for murder as a capital offense, so they cannot show prejudice. Clark and Hardin's motion does not mention that, under Kentucky law, transporting a victim, without disclosing to the victim and underlying criminal purpose, constitutes kidnapping under KRS 509.040 and KRS 509.010. In a capital case kidnapping is an aggravator. KRS 532.025. In the present case, the evidence strongly suggested that Clark and Hardin transported the victim without disclosing their true purpose to her.

Bar Counsel interprets this statement as a "thinly veiled threat" that if the defendants exercised their Constitutional right to request a new trial, they would charge them with kidnapping and make it a capital case. Bar Counsel further argues that the new indictments sought to obtain an advantage in the murder case Ryan and Williams believed they were being erroneously forced to retry because the new indictments would have given the Commonwealth more leverage against the defendants.

Recently, in addressing alleged violations of SCR 3.130(3.4)(f) for threatening or presenting criminal or disciplinary charges against a judge and opposing counsel, this Court explained

> [t]he mere filing of such complaints, of course, is not afoul of the Rule, but rather the violation occurs in the filing or threatening to file such complaints "solely to obtain an advantage in any civil or criminal matter." SCR 3.130(3.4)(f). Whether the disciplinary complaints have merit is tangential to this issue. *See Blum*, 404 S.W.3d at 850 (stating "[i]n our view, it is 'only marginally consequential whether the target lawyer has in fact behaved unethically.' Rather, the 'focal point here is the purpose of the threat and not the conduct of the lawyer being threatened[ ]' ") (quoting Douglas R. Richmond, *Saber–Rattling and the Sound of Professional Responsibility*, 34 Am. J. Trial Advoc. 27, 61 (Summer 2010)).

*In re Dusing,* 2023-SC-0483-KB, 2024 WL 4310459, at *6 (Ky. Sept. 26, 2024).

Applying the above rationale to this case, the mere filing of the new indictments for perjury and kidnapping was not a violation of the rule. Ryan

and Williams only violated the rule if they initiated additional charges "solely to obtain an advantage in any civil or criminal matter." SCR 3.130(3.4)(f).

The KBA asserts that bringing the additional indictments gave Ryan and Williams more leverage against the defendants, whether in plea negotiations or by increasing the penalty, or to bolster their weakened murder case in front of a jury. But there is no evidence that the sole motivation in seeking the additional indictments was to gain leverage. Prosecutors are expected to use their discretion in bringing charges and are charged with determining how to apply the law to someone. Bringing additional charges would have provided a full picture view of the events that transpired between the defendants and the victim, which ultimately led to murder.

Both Ryan and Williams testified that they did not bring the perjury and kidnapping charges against the defendants to obtain an advantage in a civil or criminal matter. The attorneys assert that the Meade Circuit Court record does not support Clark and Hardin's claims that the Commonwealth sought the kidnapping indictments so it could seek the death penalty during retrial. Ryan testified that there were never any formal steps taken to pursue the death penalty. Ryan also explained that they brought the additional indictments when they did because they had just discovered the evidence necessary to establish probable cause for the commission of those crimes. Judge Butler testified that no one representing the Commonwealth ever discussed the death penalty with him. As such, we do not find by a preponderance of the evidence that Ryan and Williams had an improper purpose in bringing the additional

20

indictments, and therefore the KBA did not establish a violation of SCR 3.130(3.4)(f) by a preponderance of the evidence.

## Count III

Count III alleges violation of SCR 3.130(3.8)(a), which states in pertinent part "[t]he prosecutor in a criminal case shall . . . refrain from prosecuting a charge that the prosecutor knows is not supported by probable cause . . . ." The Inquiry Commission asserts that Ryan and Williams violated this rule by prosecuting multiple charges of perjury and kidnapping that the trial court ultimately concluded were "not the product of good faith" and vindictive. While the Trial Commissioner opined that Ryan and Williams were guilty of violating this rule, the Board unanimously found no violation.

The Board emphasized that evidence was presented to two separate grand juries, both of which found probable cause to return indictments against the defendants. "It is generally accepted that an indictment represents a finding that there is probable cause to believe that a crime has been committed." *Democratic Party of Ky. v. Graham,* 976 S.W.2d 423, 427 (Ky. 1998), *as modified* (Oct. 15, 1998) (citation omitted). In addition, the Trial Commissioner's report acknowledges that the trial court "did not believe the indictments were brought in bad faith or without probable cause."

A grand jury's role is to determine whether a prosecutor's evidence provides probable cause to issue an indictment. *Wood v. Georgia,* 370 U.S 375, 390 (1962). Two separate grand juries listened to recorded statements and both of those grand juries returned indictments. Additionally, Ryan and

Williams have consistently maintained their belief that they had probable cause to pursue the kidnapping and perjury charges. Ryan testified that he firmly believed there was probable cause to seek the indictments, and later reiterated that there was "no doubt" in his mind that he had sufficient probable cause. Likewise, Williams testified that he has never pursued criminal charges where he did not believe there was probable cause to do so.

Moreover, we perceive no subterfuge. The trial court dismissed the kidnapping and perjury indictments based on vindictive prosecution, not based on a lack of probable cause. The judge further affirmed that he did not believe that Ryan or Williams acted unethically in this case. "The grand jurors shall find an indictment where they have received what they believe to be sufficient evidence to support it . . . ." Rule of Criminal Procedure 5.10. We agree with the Board that Ryan and Williams were not guilty of violating SCR 3.130(3.8)(a), as probable cause is a fairly low standard to satisfy, requiring only a reasonable basis to believe a crime has been committed, and Ryan and Williams presented sufficient evidence to meet that standard. Therefore, there is insufficient evidence to prove a violation of SCR 3.130(3.8)(a).

### Count IV

Count IV alleges violation of SCR 3.130(8.4)(c), which states "[i]t is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit, or misrepresentation . . . ." The Inquiry Commission alleges Ryan and Williams violated this rule by falsely representing evidence to the grand jury to obtain a perjury charge against Clark, as found by the trial

22

court. The Trial Commissioner found Ryan and Williams guilty of violating this rule, but his rationale is incomprehensible. The report often lacked support for its conclusions and was poorly worded.[6] The Board determined that the Trial Commissioner failed to cite any conduct that involved dishonesty, fraud, deceit or deception and unanimously voted that Ryan and Williams did not violate this rule.

Bar Counsel asserts that Williams mischaracterized Clark's testimony in order to secure a perjury conviction. During the grand jury proceedings, Williams played a clip from the 2015 evidentiary hearing during which Clark's counsel asked him about his parole board appearance, and Clark testified that he had never confessed or "said that [he] committed the murder." Williams summarized this exchange for the grand jury and said "[t]hey asked him if he had ever admitted he had any involvement in this crime, and he said no." Williams juxtaposed Clark's testimony with an audio recording from Clark's 2006 appearance before the parole board, during which he took responsibility for his actions and admitted to helping Hardin move the victim's body after Hardin killed her. Williams then provided his interpretation that when Clark stated under oath in 2015 that he never admitted to any involvement in the

---

[6] For example, the report states "However, the Meade Circuit Court's 'Findings of Fact,' referenced above, as supported by the documents and the avowal exhibits." The report also states, "[a]s for the CD being a complete recording of the 2006 Parole Board hearing being complete, the copy provided to the Defendants in response to discovery and to the Complainant and the Trial Commissioner it does not appear to be a complete recording."

case, that was perjury because he had previously admitted his involvement to the parole board.

As explained in discussing Count I above, Williams equated Clark's statement that he helped Hardin move the body to being involved with the murder, which is a reasonable and plausible interpretation. Bar Counsel has failed to point to any other evidence that establishes Ryan and Williams acted dishonest or deceitful in the grand jury proceedings. Ryan and Williams played the tapes for the jury, gave factual background about the case, and provided their own interpretations in applying Kentucky law to the charges at issue. The grand jury was able to listen to the recordings and make its own determination as to whether there was probable cause supporting the charges.

We further note that on the same day the trial court signed the order dismissing the kidnapping and perjury indictments, the trial court also signed an order denying Clark and Hardin's motion to dismiss the indictments for prosecutorial misconduct, emphasizing that "[c]ourts are extremely reluctant to scrutinize grand jury proceedings as there is a strong presumption of regularity that attaches to such proceedings." *Commonwealth v. Baker,* 11 S.W.3d 585, 588 (Ky. App. 2000). The trial court further concluded that Clark and Hardin did not demonstrate a flagrant abuse of the grand jury process that resulted in both actual prejudice and deprived the grand jury of autonomous and unbiased judgment due to prosecutorial misconduct. As such, we conclude that Ryan and Williams are not guilty of violating this rule.

In addition to the findings above, and our thorough review of the lengthy procedural history in this case, this Court does not find sufficient evidence to recommend discipline for Ryan and Williams. We note generally that both Ryan and Williams have maintained lengthy, unblemished careers as prosecutors with no history of prior discipline and a clear dedication to public service. Ryan represented the Commonwealth in litigating this case for approximately twenty-two years, and Williams assisted with the case since 2015. While appreciating the serious concern of overzealous or vindictive handling of criminal matters by the state, and the KBA's and this Court's role in ensuring fair and unbiased handling of criminal cases, the KBA has not met its burden.

## CONCLUSION

Based on the foregoing, we conclude that Ryan and Williams did not commit any misconduct and that no discipline is warranted.

All sitting. All concur.

25